IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 24-cv-02798-PAB-MDB

ANTHONY PRICE,

Plaintiff,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

Defendant.

---

# ORDER

---

This matter comes before the Court on Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment [Docket No. 26]. Plaintiff Anthony Price filed a response. Docket No. 29. Defendant filed a reply. Docket No. 33.

## I. UNDISPUTED FACTS[1]

Defendant State Farm and Casualty Company ("State Farm") issued a homeowners insurance policy (the "policy") to plaintiff for his property located on North Tidy Drive East in Pueblo West, Colorado (the "property"). Docket No. 26 at 2, ¶ 1. The property is a two-story, single family residential structure constructed in 2018. *Id.* at 3, ¶ 2. The effective dates of coverage for the policy are January 1, 2023 through January 1, 2024. *Id.* at 2, ¶ 1. The policy provides coverage for direct physical loss to the property caused by a covered peril, subject to all applicable terms, conditions, limitations, and exclusions. *Id.* The policy states, in relevant part:

---

[1] The following facts are undisputed unless otherwise noted.

**SECTION I – LOSSES INSURED**

**COVERAGE A – DWELLING**

***We*** will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and ***we*** will not pay for, any ***diminution in value***.

*Id.* at 3, ¶ 3. Regarding losses that are not insured, the policy states in relevant part:

**SECTION I – LOSSES NOT INSURED**

1. ***We*** will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   g. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

   k. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations (including slabs, basement walls, crawl space walls, and footings), walls, floors, roofs, or ceilings;

   However, ***we*** will pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section.

3. ***We*** will not pay for, under any part of this policy, any loss consisting of one or more of the items below. Further, ***we*** will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

   a. conduct, act, failure to act, or decision of any person, group, organization, or governmental body whether intentional, wrongful, negligent, or without fault;

   b. defect, weakness, inadequacy, fault, or unsoundness in:

      (1) planning, zoning, development, surveying, or siting;

      (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

      (3) materials used in repair, construction, renovation, remodeling, grading, or compaction; or

      (4) maintenance;

      of any property (including land, structures, or improvements of any kind) whether on or off the ***residence premises***; or

   c. weather conditions.

   However, ***we*** will pay for any resulting loss from items 3.a., 3.b., and 3.c. unless the resulting loss is itself a Loss Not Insured as described in this Section.

*Id.* at 3-4, ¶ 4.

On October 24, 2023, plaintiff reported an insurance claim to State Farm, alleging that the property was damaged by a hail event that occurred on June 16, 2023. *Id.* at 5, ¶ 5. Upon receipt of the claim, State Farm began an investigation and assigned Brent Zurbriggen of Eberl Claims Service as the external claims adjuster to inspect the property. *Id.*, ¶ 6. Mr. Zurbriggen performed his inspection on or about November 6, 2023. *Id.* Following the inspection, Mr. Zurbriggen documented that the roof appeared to be in good condition, but noted hail-related dents on the rear slope of the property. *Id.*, ¶ 7. Mr. Zurbriggen also noted limited hail damage to the gutters and downspouts on all elevations of the property. *Id.*

On November 15, 2023, State Farm issued a coverage determination letter enclosing an estimate for the replacement cost of covered repairs and payment after application of the policy deductible and recoverable depreciation. *Id.*, ¶ 8. The letter explained that the chipped stucco siding resulted from improper paint application and was excluded from coverage as improper workmanship. *Id.*, ¶ 9. The letter also explained that wear, tear, and deterioration of the roof shingles were non-covered conditions. *Id.* State Farm invited plaintiff to submit additional information regarding his claim for reconsideration. *Id.* In the following weeks, State Farm communicated with plaintiff and his agents about plaintiff's inquiry regarding a second inspection. *Id.* at 6, ¶ 10.

On or about January 11, 2024, plaintiff submitted additional photographs from a roof contracting company, Optimum Roofing, which purportedly showed hail damage to items not included in State Farm's initial estimate. *Id.* State Farm reviewed the photographs and determined that the images did not reflect hail damage. *Id.*, ¶ 11.

Following a managerial review, State Farm concluded that a second inspection was not warranted and issued a letter on January 15, 2024 denying plaintiff's request. *Id.*

On or about January 18, 2024, State Farm received a letter from an attorney representing plaintiff. *Id.*, ¶ 12. On February 23, 2024, State Farm received a demand letter from plaintiff that included an estimate from Optimum Roofing reflecting the cost of a full roof replacement. *Id.* The estimate included items not previously mentioned by plaintiff, including a picnic table, a horseshoe pit, and Adirondack chairs. *Id.* On February 29, 2024, State Farm responded to plaintiff's demand, advising plaintiff that State Farm would retain a structural engineer to conduct a second inspection of the property to assess the extent of hail damage to the roof. *Id.* at 6-7, ¶ 13. State Farm also requested additional information from Optimum Roofing, including specific measurements and locations of the areas plaintiff claimed were not fully covered by the initial estimate. *Id.*

On March 14, 2024, State Farm retained YA Engineering Services, LLC ("YA Engineering") to provide an expert opinion regarding the alleged hail damage at the property. *Id*. at 7, ¶ 14. Michael E. Gogel of YA Engineering conducted the second inspection on March 20, 2024. *Id.* A representative of Optimum Roofing was present during the inspection to identify additional claimed damage. *Id.* On April 2, 2024, Mr. Gogel issued a written report documenting his findings. *Id.* Mr. Gogel identified limited hail-related damage to the roof. *Id.*, ¶ 15. Mr. Gogel opined that the north, south, and west facing slopes were impacted by hail from the June 16, 2023 storm. *Id.* Mr. Gogel quantified the damage as one damaged shingle per 100 square feet on the north and south slopes and three damaged shingles per 100 square feet on the west slope. *Id.*

Mr. Gogel also identified randomly distributed hail dents on certain gutters, downspouts, and window frames at the property. *Id.* Mr. Gogel reported that he did not observe hail-impact damage to the stucco siding and opined that the observed blemishes were consistent with an improper application of stucco rather than hail. *Id.* at 8, ¶ 16.

On April 18, 2024, State Farm issued a supplemental coverage letter that explained Mr. Gogel's findings. *Id.*, ¶ 17. State Farm increased the replacement cost value of covered repairs and issued an additional payment after accounting for depreciation and the prior payment. *Id.* After State Farm submitted the supplemental payment, and after several months of inactivity from plaintiff, State Farm received notice that plaintiff had filed this case. *Id.*, ¶ 18.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). A movant who bears the burden at trial must submit evidence to establish the essential

elements of its claim. *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1217 (D. Colo. 2011).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

The Court first addresses State Farm's motion for summary judgment on plaintiff's breach of contract claim. Because jurisdiction is based on diversity, the Court applies Colorado's substantive law. *See Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995); *Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 174 F.3d 1115, 1118 (10th Cir. 1999) (noting that, under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), a federal court sitting in diversity applies the substantive law of the forum

state). Under Colorado law, plaintiff must establish four elements to make out a claim for breach of contract: "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Spring Creek Expl. & Prod. Co. v. Hess Bakken Invs. II, LLC*, 887 F.3d 1003, 1033 (10th Cir. 2018) (quoting *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)).

State Farm argues that it is entitled to summary judgment because plaintiff "cannot establish that State Farm failed to perform under the insurance contract." Docket No. 26 at 9. State Farm contends that the policy "provides coverage for direct physical loss caused by covered perils, including hail, but expressly excludes loss caused by wear and tear, deterioration, and faulty or defective workmanship or maintenance" and, therefore, State Farm was not contractually obligated to issue additional payment to plaintiff. *Id.* at 10. State Farm argues that plaintiff cannot create a genuine dispute of material fact regarding its non-performance based on the Optimum Roofing estimate or the expert report of Brandon Allen. *See id.* at 10-11.

Plaintiff responds that Mr. Allen's report and testimony "provide[d] extensive evidence establishing that Plaintiff's property suffered covered storm damage during the policy period as well as the fact that State Farm failed to account for some of that damage – specifically, the roof and exterior stucco." Docket No. 29 at 5-6. Plaintiff argues that he has created a genuine dispute of material fact because "Mr. Allen's report and testimony directly contradict State Farm's assertion that the roof sustained only minimal or non-covered damage." *Id.* at 6.

The Court has granted State Farm's motion to exclude Mr. Allen's opinions regarding the hailstorm that caused the damage to plaintiff's property. *See generally* Docket No. 48. As a result, Mr. Allen's opinion that the property sustained damage from the June 2023 hailstorm is excluded. Although Mr. Allen opines that the shingle damage he observed is consistent with hail bruising based on HAAG Engineering standards, State Farm's undisputed evidence of subsequent hailstorms at the location means that Mr. Allen cannot state that the hail damage he observed on June 12, 2025 is that same physical evidence that State Farm, Optimum, or Mr. Gogel observed over 15 months earlier. Plaintiff relies only on Mr. Allen's opinions to raise a dispute regarding State Farm's breach of contract, namely, State Farm failing to provide full benefits under the policy for hail damage from the June 16, 2023 storm.[2] *See* Docket No. 29 at 5-6. Given that State Farm has identified a lack of evidence on an essential element of plaintiff's claim[3] – that State Farm failed to pay full benefits for the damage

---

[2] Plaintiff does not rely on the estimate from Optimum Roofing in support of his breach of contract claim. *See* Docket No. 29 at 5-6. However, even if plaintiff did, this evidence would be insufficient to raise a genuine dispute of material fact. As State Farm notes, the Optimum Roofing estimate "seeks full replacement of the roof and other additional items without identifying the scope, extent, or cost of covered damage beyond what State Farm already paid." *See* Docket No. 26 a 10-11. Furthermore, as noted by State Farm's motion in limine, the Optimum Roofing estimate is not supported by admissible expert opinion evidence. *See* Docket No. 37 at 4-7. While plaintiff argues in response to the motion in limine that he has admissible opinion evidence regarding the Optimum Roofing estimate, *see* Docket No. 44 at 2-3, plaintiff does not present this argument in response to State Farm's motion for summary judgment. And in any event, plaintiff's disclosure of his expert from Optimum Roofing is inadequate for the reasons identified by State Farm. *See* Docket No. 37 at 5-6. Thus, this evidence does not demonstrate State Farm's non-performance under the contract.

[3] To state a claim for breach of contract under Colorado law, a party must allege (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) damages. *Warming Trends, LLC v. Stone*, No. 19-cv-03027-PAB-STV, 2023 WL 2716652, at *10

caused by the June 16, 2023 hailstorm – plaintiff has the burden to raise a genuine dispute of material fact regarding that element. Because plaintiff has failed to cite evidence placing in dispute State Farm's non-performance under the policy, the Court will grant summary judgment for State Farm on Claim One. Furthermore, because the Court will dismiss plaintiff's breach of contract claim, plaintiff's bad faith claims must also be dismissed. *See MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1192–93 (10th Cir. 2009) ("Having concluded that the insurance companies' denial of coverage was proper as a matter of law, we must also affirm the district court's grant of summary judgment in their favor on [plaintiff's] bad faith claim. It is settled law in Colorado that a bad faith claim must fail if . . . coverage was properly denied."); *Barry v. State Farm Mut. Auto. Ins. Co.*, No. 23-cv-00849-DDD-SKC, 2024 WL 659510, at *3 (D. Colo. Jan. 16, 2024) (because denial of the claim "was proper as a matter of law under the policies, there is no genuine dispute of material fact as to whether [the insurer] breached its contract in bad faith. In other words, without a breach, there is no bad faith breach.").[4]

## IV. CONCLUSION

Therefore, it is

---

(D. Colo. Mar. 30, 2023); *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (collecting cases).

[4] Even if the Court reached the bad faith claims, the Court would find that plaintiff has failed to raise a genuine dispute that State Farm denied his claim in bad faith and was unreasonable. The undisputed facts demonstrate that State Farm responded promptly to plaintiff's communications and requests for reconsideration. State Farm hired Mr. Gogel upon receiving plaintiff's demand, who noted additional damage that was not included in State Farm's initial estimate. State Farm then paid benefits to plaintiff to repair that damage. Docket No. 26 at 8, ¶ 17. However, plaintiff fails to raise a genuine dispute of material fact that State Farm's conclusion that no additional hail damage occurred was unreasonable given that Mr. Allen's opinions are excluded.

**ORDERED** that Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment [Docket No. 26] is **GRANTED**. It is further

**ORDERED** that plaintiff's claims are **DISMISSED with prejudice**. It is further

**ORDERED** that Defendant State Farm Fire and Casualty Company's Motions in Limine [Docket No. 37] is **DENIED as moot.**[5] It is further

**ORDERED** that this case is closed.

DATED September 15, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge

[5] Because the Court will dismiss plaintiff's claims, State Farm's motion to limit trial evidence is moot.